UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**DARREN EARL VAUGHAN**,                         Case No. 2:13-cv-00963-KI

        Petitioner,                         OPINION AND ORDER

   v.

**MARK NOOTH**,

        Respondent.


Thomas J. Hester
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon 97204

   Attorney for Petitioner


Ellen F. Rosenblum
Attorney General

Page 1 - OPINION AND ORDER

Nick M. Kallstrom
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

    Attorneys for Respondent

KING, Judge:

Petitioner Darren Earl Vaughan, an inmate incarcerated at Snake River Correctional Institution ("SRCI"), brings this action, pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus. For the reasons set forth below, I deny the petition.

## FACTS

A Klamath County grand jury returned an indictment charging Vaughan with two counts of first degree rape and two counts of first degree sodomy arising from his alleged sexual abuse of his step-daughter, S.A. A jury, empaneled on September 29, 2010, heard opening statements and received testimony from five of the State's witnesses: Lake County Deputy Charles Poré, who initially interviewed S.A. and conducted the investigation; Bonnie Vaughan, the victim's mother; Devon Mast from the Oregon State Police Forensics Laboratory; Daniel Petersen, a forensic scientist with the Oregon State Police; Lisa Cahill, a nurse practitioner with the CARES[1] program who examined S.A.; and Kendra Holderman, a child forensics interviewer for CARES.

Deputy Poré described meeting S.A. at her school on January 9, 2009; at the time of his meeting, he "put her in the age of 12 to 13[.]" Resp't Ex. 105, at 22. He understood from her that the sexual abuse had occurred in both Klamath County and Lake County.

---

[1] A clinic designed to diagnose and treat child abuse.

Ms. Vaughan testified that S.A.'s date of birth was February 17, 1996. She testified that Vaughan was 47 "I think" at the time of her testimony. Resp't Ex. 104, at 46.[2] The family had moved from Klamath County to Lake County in 2008. She also testified that when she visited Vaughan at the jail following his arrest, she asked Vaughan how he could do this to S.A.; he responded, "I don't know." Resp't Ex. 105, at 58-59. In the same conversation, she remembered he volunteered that everything S.A. was saying was true and "Please don't blame her." Id. at 59. He also said if he could go back, he would change everything. The jury heard a recording of that conversation between Vaughan and Ms. Vaughan.

Together, the testimony of Mast and Petersen covered the physical evidence in the case and the DNA test results on that physical evidence. Specifically, two sofa cushions, a wash cloth, and a mattress cover were recovered from Vaughan's camper parked on the family's property. The mattress cover bore a stain containing seminal fluid; the seminal fluid revealed at least three DNA contributors. The major contributor matched S.A.'s profile (in a random population of unrelated individuals the frequency of occurrence of that DNA profile is less than 1 in 10 billion). Vaughan could not be excluded as a minor contributor (on average 1 in every 25,000 Caucasians would not be excluded as a contributor), and Ms. Vaughan's DNA was inconclusive (too limited an amount of DNA obtained to say whether she was a contributor).

Cahill and Holderman testified about their interview of S.A. and the associated physical examination at CARES. Cahill testified that S.A. was 12 at the time of the examination and that

---

[2] Vaughan's counsel, in his opening statement, conceded his client's age, asking the jury to "imagine what it's like to be in your forties and confronted with these kind of allegations and basically being required to prove a negative proposition, which is what we're being asked to do." Resp't Ex. 105, at 19.

Page 3 - OPINION AND ORDER

the changes in S.A.'s hymenal tissue were consistent with repetitive sexual intercourse over an extended period of time. The jury watched the video of their interview of S.A., which lasted approximately two hours.

The next day, on September 30, 2010, Vaughan appeared with his attorney, who reported to the court that Vaughan wished to enter a no contest plea to Count 3. Vaughan's attorney represented that he had "discussed this at some length with Mr. Vaughan and it's a very difficult choice he's making, but he feels it's better than have the girl testify[.]" Resp't Ex. 106, at 1. Vaughan acknowledged the offense carries a determinative sentence of 300 months' confinement, with a lifetime term of supervision. Vaughan also acknowledged the charges pending in Lake County, that he intended to enter a plea there as well, and that all the parties understood his sentence in Lake County would run concurrent with his sentence in Klamath County.

Judge Dan Bunch asked Vaughan the following question:

> So to the charge Count 3, Sodomy in the First Degree in violation of Oregon Revised Statute 163.405(b), a Class A felony, that you did on or prior to 16 February 2008, but after 16 February, 2007, in this county, unlawfully and knowingly engage[] in deviate sexual intercourse with [S.A.], whose date of birth is February 17, 1996, a child under the age of 12 years, said acts being contrary to the statutes in such cases made and provided and against the peace and dignity of this state, how do you plead?

Resp't Ex. 106, at 5. Vaughan entered a plea of no contest.

Judge Bunch then noted he would normally go through the basis of a plea, but that having heard the evidence he felt the evidence overwhelming indicated Vaughan's guilt. Judge Bunch sentenced Vaughan to 300 months' confinement, followed by post-prison supervision for life. The State dismissed the remaining counts.

Page 4 - OPINION AND ORDER

On October 5, 2010, the Lake County charges were set for trial to begin on January 19, 2011. On January 19, 2011, Vaughan entered no contest pleas to the Lake County charges.

Vaughan signed a Petition for Post-Conviction Relief ("PCR") on September 8, 2011, complaining about the trial court's lack of authority to impose a sentence in excess of the presumptive sentence absent enhancement facts proven or admitted. An attorney for Vaughan subsequently filed a Formal Petition for Conviction Relief on January 17, 2012, arguing that Vaughan's attorney was ineffective for not arguing that the 300 month sentence is disproportionate to the crime and violates the U.S. and Oregon Constitutions. Vaughan's PCR counsel conceded the State's Motion for Summary Judgment, filed on February 17, 2012. Malheur County Circuit Court granted the State's motion just a few days after counsel conceded it, but neither party received notice of that ruling. When the State's counsel contacted the court in May to ask about the status of its motion, the Court replied it had granted the motion and issued judgment on March 15, 2012.

Vaughan's attorney moved to file a late notice of appeal on May 29, 2012, and Vaughan filed a pro se notice of appeal on May 31, 2012. The State objected to the late notice, pointing out the motion failed to identify the "colorable claim of error" subject to appeal. Resp't Ex. 117, at 2 (citing ORS 138.650(2)). The Oregon Court of Appeals denied the motion to file a late appeal, agreeing with the State that Vaughan failed to show a colorable claim of error. In addition, it found Vaughan failed to show by clear and convincing evidence that his failure to file a timely notice of appeal was not attributable to him.

Vaughan, through new counsel, filed a petition for reconsideration and a renewed motion to file a late appeal. The Oregon Court of Appeals granted reconsideration, but adhered to its

Page 5 - OPINION AND ORDER

order of dismissal.  It expressed no view as to whether Vaughan showed that the failure to file a timely notice of appeal was not his fault, but found it "patent that he failed to establish" a colorable claim of error" made by the PCR court.  The Court of Appeals further found "the existence of dispositive precedent" on the issue of the constitutionality of Vaughan's sentence meant Vaughan "cannot plausibly contend that the court's allowance of summary judgment was properly subject to appellate review and correction as plain error.  Accordingly, even though the threshold for showing a 'colorable claim of error' is low, appellant has failed to satisfy that standard."  Resp't Ex. 121, at 2.

The Oregon Supreme Court denied Vaughan's petition for review on December 13, 2012.

The appellate judgment in post-conviction issued on February 5, 2013

Vaughan filed his federal habeas corpus petition on June 1, 2013, when he deposited it with the institution for mailing.  Vaughan's claim, as argued by habeas counsel, is that his trial attorney was ineffective in failing to object to Vaughan's 300-month sentence–a sentence which Vaughan claims was enhanced by the facts that the victim was under age 12 and the defendant was at least 18 years old at the time of the offense, without evidence or an admission to support the enhancement.

## DISCUSSION

Pursuant to 28 U.S.C. § 2244(d)(1), a one-year statute of limitations applies to an application for a writ of habeas corpus filed "by a person in custody pursuant to the judgment of a State court."  Time elapsed after finality and before collateral filing, and time after final collateral disposition and before federal filing counts against the year.  Nino v. Galaza, 183 F.3d 1003, 1006-7 (9th Cir. 1999).  Respondent argues Vaughan's habeas petition is untimely because

it was filed approximately 359 days beyond the limitation deadline, which began to run on November 1, 2010.

Vaughan contends his petition is entitled to equitable tolling. Specifically, he argues the limitation period should be equitably tolled during the time he attempted to appeal the PCR court's judgment, when the notice of appeal was late due to the PCR court's failure to notify counsel or Vaughan of its judgment. In addition, he contends the time during his incarceration in the Lake County jail (from November 1, 2010 to January 19, 2011) should be tolled because during that time he was represented by the same ineffective lawyer about whom he is complaining in this habeas petition and, as a result of having representation, he was denied access to the library.

Respondent concedes Vaughan is entitled to tolling during his untimely PCR appeal. Resp't Reply 2. However, even considering the time tolled for the appeal, Vaughan still "needs at least 63 days of additional tolling." Pet'r Br. in Supp. of Am. Pet. 11. Vaughan points to the time from November 1, 2010 (when the limitations period began to run) and January 19, 2011 (after which Vaughan was no longer housed in the Lake County jail), arguing those 80 days are subject to equitable tolling.

The statute of limitations is tolled "[f]or the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2). In addition, the limitation period may be equitably tolled upon a showing that (1) petitioner was pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented a timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010); Doe v. Busby, 661 F.3d 1001, 1011 (9th Cir. 2011). The

Page 7 - OPINION AND ORDER

propriety of equitable tolling is a fact-specific inquiry which requires the petitioner to prove that the extraordinary circumstance was the cause of his late filing. Roberts v. Marshall, 627 F.3d 768, 772 (9th Cir. 2010); Doe, 661 F.3d at 1011. If the petitioner did not exercise reasonable diligence in attempting to file after the extraordinary circumstance began, the causal link between the extraordinary circumstance and the failure to file is broken. Doe, 661 F.3d at 1012-13; Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006). Equitable tolling may be justified when a prisoner is prevented from filing by a state official's wrongful conduct, an inadequate prison library, denial of access to files, or an attorney's egregious conduct. Shannon v. Newland, 410 F.3d 1083, 1089-90 (9th Cir. 2005) (citing cases). However, the threshold upon which a petitioner may obtain equitable tolling is very high, "lest the exceptions swallow the rule." Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010).

Vaughan offers no evidence that he exercised reasonable diligence between November 1, 2010 and January 19, 2011. He reports only the following:

> From September 30, 2010 until January 19, 2011, I was continuously confined in the Lake County, Oregon jail.
>
> From September 30, 2010 until January 19, 2011, I was continuously represented by Attorney Philip Studenberg in relation to charges pending in Lake County, Oregon.
>
> Because I was represented by Studenberg from September 30, 2010 until January 19, 2011, the Lake County, Oregon jail would not provide me with access to the law library or legal materials from which I could learn of my appellate rights.

Vaughan Aff. at 3 (¶¶ 9-11).

I find Vaughan has failed to demonstrate he was reasonably diligent; he does not allege he engaged in any discussions with his attorney about his right to post-conviction relief or the

Page 8 - OPINION AND ORDER

process of seeking habeas relief. He does not assert that his attorney refused him access to legal materials. He offers no evidence he diligently sought information about his legal rights from anyone at all. Cf. Holland, 560 U.S. at 653 (petitioner wrote attorney letters, repeatedly contacted state court, clerks, and the state's bar association, and filed a habeas petition the very day he discovered the limitations period had expired); Doe, 661 F.3d at 1014 (retained attorney for $20,000; repeatedly asked about status of petition; filed complaint when no petition forthcoming; counsel delayed returning file for six months; petitioner filed petition 10 days after receiving file).

In addition, with respect to extraordinary circumstances, if Vaughan blames his attorney, he presents no factual details suggesting his counsel was the reason for his late filing. Even if Vaughan's attorney failed to inform him of his appellate rights, ordinary negligence is not grounds for equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-37 (2007); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (miscalculating due date); cf. Spitsyn v. Moore, 345 F.3d 796, 801-802 (9th Cir. 2003) (counsel's failure to file federal habeas petition despite petitioner's repeated requests to do so, combined with failure to return file to petitioner until after the expiration of the limitation period, was sufficiently egregious to warrant equitable tolling); Rudin v. Myles, 781 F.3d 1043, 1056 (9th Cir. 2015) (petitioner's appointed counsel abandoned case and prevented petitioner from contacting him, such as blocking collect calls).

Finally, an inmate's ignorance of the law and lack of legal sophistication, by itself, does not warrant equitable tolling. Raspberry v. Garcia, 448 F.3d 1150 (9th Cir. 2006) (citing cases from other circuits).

Vaughan makes a quick reference to his time incarcerated at SRCI, after January 19, 2011, suggesting the limitations in library access during that time also supports his equitable tolling theory.  However, the evidence is to the contrary.  As an initial matter, he complains only generally about restrictions on library access (sessions limited one per week, inadequate computer resources, scheduling a session takes between 10 days and three weeks), but he fails to allege any specific facts to support a conclusion that these limitations were extraordinary, rather than ordinary incidents of prison life.  Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010); Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009).  He has also fails to explain how his limited library access caused the late filing of his habeas petition.  Finally, the evidence demonstrates Vaughan was able to prepare a number of lengthy legal documents during his incarceration at SRCI, including an Amended Petition for Post-Conviction Relief with a 20-page supporting memorandum, which he sent to his PCR attorney on March 10, 2012.  Vaughan filed additional motions with the court on May 15 and July 3, 2012.

Vaughan's petition for writ of habeas corpus is untimely.  I find he has failed to demonstrate a sufficient basis for equitable tolling in that he has not shown he diligently pursued federal habeas relief, or that extraordinary circumstances prevented him from filing a federal petition within the one-year statute of limitations.

Vaughan asks the court to conduct an evidentiary hearing on the issue of equitable tolling. Because the record is clear that the fault for failing to comply with AEDPA's statute of limitations lies with Vaughan, an evidentiary hearing is neither necessary nor in the interests of judicial economy.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing); see

also Roy, 465 F.3d at 969 ("A habeas petitioner . . . should receive an evidentiary hearing when he makes a 'good faith allegation that would, if true, entitle him to equitable tolling.'"); Griffin v. Johnson, 350 F.3d 956, 966 (9th Cir. 2003) (hearing unnecessary when petitioner failed to establish he would produce more or different evidence than what was before the court).

## CONCLUSION

Based on the foregoing, the amended petition for writ of habeas corpus [8] is denied. This proceeding is dismissed with prejudice. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be denied. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this    30th    day of June, 2015.


                            /s/ Garr M. King
                            Garr M. King
                            United States District Judge